AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Western District of Texas

FILED
MAR - 5 2018
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

| | |
|---|---|
| United States of America<br>v.<br>Jose Adolfo NUNEZ Salazar<br><br>_Defendant(s)_ | ) ) ) ) ) ) ) Case No.<br><br>EP-18-mj-1374-ATB |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __March 3, 2018__ in the county of __El Paso__ in the __Western__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. §952 (a) | Knowingly and intentionally import into the United States from the Republic of Mexico a quantity of Methamphetamine, to with; approximately 3.334 kgs (gross weight) of Methamphetamine in a solution, a Schedule II Controlled Substance; |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
Complainant's signature

Dominique Brown/ Special Agent
_Printed name and title_

Sworn to before me and signed in my presence.

Date: __03/05/2018__

_____
Judge's signature

City and state: __El Paso, Texas__   Anne T. Berton U.S. Magistrate Judge
_Printed name and title_

## AFFIDAVIT

On March 3, 2018, Jose Adolfo NUNEZ Salazar entered the United States from the Republic of Mexico at the Bridge of The Americas Port of Entry. NUNEZ was the driver and sole occupant of a gray, 1983 Ford F-150, bearing Mexico license plate ZUG7472.

During primary inspection, Customs and Border Protection Officer (CBPO) observed NUNEZ while pushing his vehicle through the vehicle lane. Primary CBPO took a negative customs declaration from NUNEZ. During primary inspection primary CBPO noticed NUNEZ's hands visibly shaking as he presented his border crossing card. The primary CBPO asked NUNEZ what his purpose of travel was into the United States. NUNEZ stated that he was going to purchase clothes in the El Paso area that he would then sell in Mexico. NUNEZ stated to the primary CBPO that he was attempting to open a business in Mexicali, Baja California, Mexico, and had traveled to Ciudad Juarez from Mexicali, in order to purchase clothes in bulk in El Paso, TX. NUNEZ stated to the primary CBPO that the vehicle belonged to his boss, and that he picked it up from the boss who resides in Ciudad Juarez, MX. NUNEZ stated to the primary CBPO that he met his boss after responding to a Craigslist ad while searching for employment. NUNEZ stated to the primary CBPO that he had driven from Mexicali, MX to Ciudad Juarez, MX in his personal vehicle, and had been staying in Ciudad Juarez, MX for the past 15 days. NUNEZ was asked by the primary CBPO if any vehicle repairs had been done. NUNEZ stated that the vehicle recently had an oil change and work had been done to the distributor. The primary CBPO asked NUNEZ if he'd been paid, coerced, or forced to drive the vehicle into the United States, NUNEZ replied, no. The primary CBPO asked NUNEZ if he was responsible for everything in the vehicle, and NUNEZ replied, yes. Primary CBPO then referred NUNEZ and the vehicle to secondary for further inspection. In secondary, NUNEZ advised the primary CBPO that he just wanted to get the truck started so that he could drive back to Mexico to get it fixed.

In vehicle secondary inspection, Contraband Enforcement Officer (CEO) assigned to secondary was conducting an exterior canine sniff with his canine "KYRA" on the vehicle, when the canine sniff resulted in "KYRA" alerting to the gas tank area of the vehicle. CEO then requested assistance from a secondary CBPO at that time.

During secondary inspection, secondary CBPO took a negative customs declaration. Secondary CBPO asked NUNEZ what his purpose of travel was into the United States. NUNEZ stated he was going shopping for clothes at Ross. CBPO asked NUNEZ where he lived, and he replied that he lived in Mexicali, MX and had driven to Juarez, MX where he'd been staying in a hotel the last 15 days. Secondary CBPO asked NUNEZ what he was doing in Juarez, MX if he lived in Mexicali, MX and NUNEZ advised that he sold items in the El Paso area, before correcting himself and advising to buy items in El Paso, so that he could resell them in Mexico. Secondary CBPO asked NUNEZ if any work had been done to the vehicle recently, and he replied there was some suspension work done 7 days ago. NUNEZ stated to the secondary CBPO that he would drive from Mexicali to Ciudad Juarez to cross into the United States to buy merchandise constantly. The secondary CBPO asked NUNEZ if he was responsible for all items inside the vehicle and NUNEZ stated, yes.

Supervisory CBPO used Marquis Reagent test kit 902 on the solution in the gas tank which resulted in a positive result for amphetamines/meth at approximately 1556 hours. Further inspection of the vehicle revealed 3.33 approximately kilograms of methamphetamine in solution concealed in the gas tank of the vehicle.

Homeland Security Investigations (HSI) Special Agent (SA) Dominique Brown observed Task Force Officer (TFO) Ruben Munoz advise NUNEZ of his Miranda Rights in the Spanish language. Upon being advised of his Miranda Rights, NUNEZ stated that he understood his rights and agreed to give a statement without the presence of an attorney.

During the interview NUNEZ stated to agents that he responded to a Facebook advertisement in early January. NUNEZ stated that the advertisement was recruiting people over the age of 35 to open a business

in Mexicali, MX. NUNEZ stated he submitted his resume and was contacted by an unknown female about the job. NUNEZ stated he was told by the unknown female that his job would consist of checking pricing on merchandise in El Paso, TX, and a vehicle would be provided to him to commute. NUNEZ stated the unknown female told him he would be in charge of the business in Mexicali, MX which was to import merchandise from the United States to Mexico. NUNEZ stated he was paid for his travel expenses from Mexicali to Ciudad Juarez by the unknown female.

Agents asked NUNEZ if he checked the vehicle before he crossed the first time into the United States, and NUNEZ stated he checked underneath the truck for anything that shouldn't be there. NUNEZ also stated that he checked the tires of the vehicle. Agents then asked NUNEZ why he checked the vehicle, and NUNEZ stated because he was going to cross into the United States. NUNEZ was questioned about his prior crossing in the vehicle into the United States when he was sent in for inspection. NUNEZ stated after he was released from the inspection he felt that the truck didn't have any issues. NUNEZ was then asked what he meant by issues, and NUNEZ stated traffic tickets, drugs, or a record in the United States.

NUNEZ was then asked by agents if he thought getting paid 3,300 Mexican pesos a week, lodging, travel expenses, and meal expenses was too much money to just come into the United States to check merchandise prices. NUNEZ stated after the last time he crossed into the United States he thought the job wasn't adding up because he was being paid to do nothing. NUNEZ was asked by agents if he would have questioned the motives of the job if his son would have accepted the job. NUNEZ replied, yes.

NUNEZ was asked by agents if he dropped off the vehicle in a specific location and gave the keys to someone. NUNEZ stated that on two occasions he met with an unknown male and gave him the keys to the vehicle. NUNEZ was asked by agents how he returned to Mexico after those occasions, and NUNEZ stated by walking. NUNEZ was asked by agents if he thought it was odd that he was giving the vehicle to another person to take back to Mexico, and he replied, no. NUNEZ stated he was told by his boss that the person was picking up merchandise to take to Mexico.

Because this Affidavit is being submitted for the limited purpose of establishing probable cause as set forth herein, I have not included each and every fact known to me concerning this investigation.